POLICE JURY OF THE PARISH OF ST. MARY *v.* R. W. HARRIS.

The term "landed estate," on which Police Juries are authorized by the Act of the Legislature to levy taxes for works of internal improvement, embraces, also, all houses, fixtures and improvements thereon, and neat cattle, horses and mules when attached to, and used on a plantation.

The last assessment roll for State taxes is the proper basis of the levy of the parish tax for interternal improvements.

APPEAL from the District Court of St. Mary, *Voorhies*, J.
R. N. *McMillan*, for plaintiff. J. G. *Olivier*, for defendant and appellant.

MERRICK, C. J. This suit was instituted by the·Police Jury of the parish of St. Mary, to recover for the use of the Opelousas and Great Western Railroad Company, one hundred and eighty dollars assessed on the landed estate of the defendant, estimated at $36,000.

The action is based upon an ordinance of the Police Jury of the said parish, passed in the month of October, 1852, by which a tax of three per centum was levied on the landed estate, as expressed in the tax roll of the year 1851, and payable in six annual installments of one-half of one per cent. each, commencing on the first day of June, 1853, to pay the subscription of six thousand two hundred and sixty-four shares of stock to said Company.

The answer alleges, in substance, that the assessment of the tax is illegal, because made upon the assessment roll of 1851, and because it was made not only upon land, but also upon the improvements on the same, the machinery, neat cattle, horses, and mules, attached to the plantation.

The Judge of the lower Court being of the opinion that the Act of the Legislature, authorizing the levying of the tax, contemplated the land only as the object of taxation, reduced the assessment from $36,000 to $22,900. He

gave judgment accordingly in favor of the Police Jury for $114 50, with legal interest from June 1st, 1853, until paid.

The reduction of $13,100, made by the Judge of the lower Court, is composed of the improvements on the plantation, estimated by witnesses at, say $10,000, and the value of the horses, mules and neat cattle, attached to the plantation, estimated at the further sum of $3,100.

The defendant appealed.

Since the appeal has been pending the defendant has departed this life, and the administrators of his succession have been made parties to the suit.

Plaintiff has filed an answer to the appeal, praying that the judgment be amended so as to give the plaintiff the whole amount claimed.

The objections to the payment of this tax in the answer as urged in argument, are reducible to the two points mentioned :

1st. The tax ought to have been levied on the land alone, and not upon the improvements, and horses, mules, and neat cattle employed in cultivating the land.

2d. The assessment ought not to have been made upon the tax roll of 1851.

On the first point, we think that the term " landed estate" contained in the Act of the Legislature, approved March 12, 1852, upon which the Police Jury were authorized, by the Act, to levy a tax to pay the amount of subscription to the stock of corporations undertaking works of internal improvement, clearly embraces not only the land, but all houses, fixtures and improvements, of every kind thereon, and all machinery, neat cattle, horses and mules, when attached to and used on a plantation or farm.

The ordinary meaning of the words " landed estate" seems to be an interest in and pertaining to lands. Thus we say, a landed proprietor; and mean thereby any person having an estate in lands, whether highly improved or not.

The Civil Code not only includes as a part of an immovable, the buildings and other constructions thereon, whether they have their foundation in the soil or not, but, among other things, the cattle, (les animaux,) which the owner has placed upon it for its service and improvement. C. C. 455, 459.

But, in reference to taxation, the Legislature has defined what is meant by landed estate. The first object of taxation specified in the Act to provide for the government of this State, passed in 1847, is expressed in these words:

## "Objects of Taxation.

" First, all lands and lots of ground lying in the State, owned or claimed by any person or corporation, whether patented or not, including in the assessment thereof all houses, fixtures, improvements of every kind or value, thereon or affixed thereto, all machinery, neat cattle, horses and mules, when attached to and used on a plantation or farm."

This same provision was in force at the time of the passage of the Act of 1852, and was re-enacted in the Acts of 1853 and 1855.

The assessment complained of in this case is in the precise language of the Act of 1847, and in the language contained in the forms sent by the Auditor of Public Accounts to the Assessor of the parish of St. Mary, and other parishes, to be filled up by them in the assessment of the taxes.

ST. MARY
v.
HARRIS.

That this formula contains the objects of taxation intended under the term "landed estate" will further appear by reference to the manner in which the assessment of the parish tax is made. A new assessment is not made out, but the assessment roll for the State taxes is taken as the basis of the tax for parish purposes, and the parish tax is extended over the tax roll of the State taxes, say for one-third, one-half, or whatever larger or smaller proportion thereof, the Police Jury may assess in the manner provided by law. The Legislature, therefore, in confirming the power to levy the tax upon the landed estate, must have intended it should be levied on this object of taxation as assessed on the tax roll for the purposes of the State. Art. 1847, p. 171, Sec. 34.

The fixtures upon a plantation as well as the horses and mules attached to it form so completely a part of the same, that were the tax collector to seize the tract of land for the payment of the tax he would also be obliged to seize them as constituting a part of the same. C. P. 645.

On the second point, viz: that the assessment was illegal because the tax roll of the year 1851 was taken as the basis of the same, it may be observed that there is nothing in the record to show that the assessment roll of the year 1852 had been completed. Act of 1850, p. 136, Sec. 27, 28. In the absence of any allegation and proof to the contrary, it is but fair to presume that the Police Jury took the last assessment roll as the one upon which to levy the tax.

The answer in this case admits that the Police Jury submitted the ordinance to the approval and ratification of the voters of the parish of St. Mary, on whose property the tax was to be levied, and that a majority of the voters approved and ratified the same.

Now, as the Police Jury were obliged to raise a specific sum of money, viz, $156,600, to meet the subscription of stock to the Opelousas and Great Western Railroad Company, it became necessary to provide the means in such a manner that they should not be liable to fluctuation, or à tout diminution.

They therefore fixed the whole tax at three per centum on the landed estate so assessed for the year 1851, giving however to the tax payer the facility of paying by installments, instead of paying the tax at once. Had they required the payment of three per centum at once, and the voters had approved the ordinance, it would have been legal, and we cannot conceive that it is less so because the Police Jury have granted terms for its payment. Not only so, but the Act of 1852 expressly provides that the Police Jury shall pass the ordinance stating the levy of the tax, amount of subscription, the rate of taxation, and the period or periods when it shall be payable.

It also seems to be in accordance with the spirit of Art. No. — of the Constitution of 1852, which has been carried into effect as to Police Juries by the Act of the Legislature, approved the 29th of April, 1853, which prohibits them from contracting any debt or pecuniary liability without providing in the ordinance creating the debt, the means of paying the same, debt and interest.

We think for these reasons the judgment should be amended so as to allow the Police Jury of the parish of St. Mary, the full amount claimed in their petition, for the use specified.

It is therefore ordered, adjudged and decreed, that the judgment of the lower Court be amended so as to allow the said plaintiff, which sues for the use of the Opelousas and Great Western Railroad Company, the full sum of one hundred and eighty dollars, with legal interest thereon from the first day of June,

A. D. 1853, instead of the sum of $114 50, allowed said Police Jury by the judgment of the lower Court; and it is further ordered, that said sum of $180, and interest, and the costs of both Courts be paid by the said adminis-trator and administratrix of the succession of said *R. W. Harris*, deceased, in the due course of administration; and it is further ordered, that said judg-ment, so amended, be affirmed.